I'm getting everybody in bed to get unpacked. Mr. Perlson, you want to reserve four minutes. That's correct. Set that clock for 11 minutes. Set that clock for 11 minutes. Good morning. May it please the court. Your Honor, in this case, we're presented with several issues in which there's been a fundamental failure of evidence supporting plaintiff's claims. In some instances, there was just simply no evidence at all to support their claims. In other instances, plaintiff simply ignored the evidence and made conclusions that had no support in the evidence. First, I'd like to start with infringement. In our brief, we raise three main issues. I'll start with the first one, which is the elements that occur in both asserted patents here, the combining of content and feedback data. In this case, plaintiff pointed to aspects of the accused system where an attribute, which is what plaintiff referred to as the content data, was used to look up the feedback aspect and contended that the use of these two features, the use of the attributes, which says it's content, and then the use of the feedback, was somehow a combination of them. But if you look at the evidence again and again, plaintiff never really says how they're combined. In fact, Judge Tendit, sort of similar to the common use of the term combined in the last argument in the sense of merging or bringing together, there is no evidence in the record whatsoever that such a combination of feedback data and content data ever took place in the accused system. Instead, plaintiff merely pointed out that both of these things existed, not that they were ever used. I mean, I'm sorry, not that they were ever combined. And it's sort of like saying that if I have a cookbook and I look up the ingredients to a cake in the book and I find them there, and then I bake the cake, that somehow I've combined the cookbook with the ingredients to make the cake. But that's not true. That's not under any plain meaning of the term. That just simply doesn't make sense. And here, the plain meaning was really not an issue of the term combined because both parties during Klenk construction, we had said it was bring together and they had said it was unite. They had tried to limit it, plaintiff had tried to limit it to unite into a single number, which the court declined to do. But that's not relevant to the instance dispute. What's relevant to the instance dispute is the plain meaning of the term combined, and that plaintiff has provided no evidence whatsoever that that actually occurred in the accused system. I guess I'm not sure what to do if we don't have a claim construction dispute fairly in front of us. What we have is a jury fact-finding on infringement. And so, aren't we supposed to look at it through that lens rather than having a debate right now over what the word in the claim means? Well, I don't think that there needs to be a debate about the plain meaning of words, especially considering that there really is no dispute over what the plain meaning is. I mean, they said it was uniting, and we said it was bringing together really the same thing, both of them. Neither of those things are met here. And so, just because they had an expert who got up there and said that, well, he views it as combined, that is not enough to support a jury verdict. And that's what the Dinah Court case that we cited stands for. They can't have an expert who just go up there and refute what the plain meaning of a word says. I mean, you can't – if the claim requires a car, I can't have an expert point to a boat and say that's a car, and that's enough just because he thinks it's a car. I mean, it's not – that's – there are plain meaning of the word. The plain meaning isn't a dispute. They actually, in their briefing, never indicate what meaning they are applying. You know, what is the plain meaning they're applying? But we know that below they said the plain meaning was uniting. We said it was bringing together, and we would submit that applying those under no circumstances have they provided any evidence that this is met at all, and that that is squarely something that should be before the court, and that just because they had an expert who said something that defied the plain meaning of the terms doesn't mean that they get – that it should be ruled in their favor. I would like to get to the two other ones because there's also a failure of proof there. They're one of the – Let's get to obviousness while you're – What's that? Let's get to obviousness. Okay. Well, here plaintiff has essentially said that they have a patent on throwing a query over a wall. There's no dispute that content feedback and using content filtering was done in the past together. We've cited three references that do this. Essentially, all that plaintiff is saying is that while it's undisputed that content and feedback were together before, that they didn't throw the query over the wall, this proverbial wall. Instead, the prior art threw the results over the wall? Is that the right way to kind of frame the debate here? I think that's sort of what they're saying. Essentially, that's certainly what the graphic shows, that there's results that were thrown over the wall. But if you actually look at what the patent says, the patent explicitly notes that in content filtering, that there is filtering in reference to a query. The patent says that explicitly in the background section. And if you look at what the claims require, the claims require that it's the content filtering system that is actually doing the filtering in reference to the query. So, for example, in claim 10 of the 420 patent, it talks about a content-based filter system. And that's in the second element. And then in the last element, it says the filter system combining pertaining feedback data from the feedback system with the content profile data in filtering each and foremost for relevance to the query. So, in fact, just as in the prior art, the patent talks about using the content filtering system to filter in reference to the query. But the patent admits that was in the prior art. So the distinction that plaintiff is raising in its obviousness case is debunked by the patent itself. There's no legitimate distinction whatsoever. I don't understand. Are you saying that the patent itself is anticipating itself based on its reference to the prior art? No, I'm sorry, Your Honor. What the patent says is that it acknowledges, and this is in column two, line 15 to 20, and I'm in the 420 here. It says, whereas conventional search engines initiate a search in response to an individual user's query and use content-based filtering to compare the query to access network informons, which is the word for information items in this patent, typically define matching informons during a limited short-term search period. So this element that they say is missing was actually in the art, and the patent acknowledges that it's in the art. I'm not saying that this sentence anticipates the patent, but I'm saying that the thing that they're saying is missing in the art is in the content systems that they acknowledge were combined with feedback systems. Did you raise 101 in this case? We did not raise 101. I mean, I imagine we probably pleaded the defense at some point, but we didn't raise it during trial or to present it. Why would you not? Well, litigation has a series of choices, but I mean, in fact, I would agree with you. The court has said that's a threshold. Yeah, well, I would agree that there are serious 101 issues here, absolutely. So, for example, I mean, really all they're claiming is this concept of using user feedback and using content and then filtering it. This isn't in any of your statement of issues here. No, I'm responding to the query. I mean, I do think that's not one of the issues that we've raised for appeal. Okay, I want you to address something because I'm going to ask Mr. Wright to address it as well, and that is I have a problem with the jury findings on secondary considerations as inconsistent. If the claimed invention was a product of ordinary mechanical or engineering skills, as indicated by independent invention finding, it can also be unexpected and superior. And I want you to address that because I'm going to ask Mr. Wright to address it. Well, you know, these issues weren't presented to the jury. No one ever argued to the jury independent invention or unsuccessful attempts by others, or at least certainly that anything that would have supported the finding that the jury made in plaintiff's favor on it. But they, in one instance, for one patent they went one way, and then another instance for another patent they went the other way. So certainly, and I think if you look at the rest of the secondary considerations finding, in particular copying, which was particularly outrageous in this case. I mean, what happened here basically is that you had the plaintiff pointed to the fact that in a Google application there was a citation to one of plaintiff's patents. And then they suggested to the jury that this showed copying, even though they acknowledged that there was no evidence of it. The judge had actually granted a motion to eliminate on copying and then let it in later. And the jury found copying. No evidence in the record whatsoever. So not only is there no support for that secondary consideration, but that is one of our strong bases for a new trial, which obviously we think shouldn't be necessary because I think judgment should be entered in our favor. But it really colored what went on in the jury, and they raised it a few times. Is the verdict form styled in kind of a black box way, where the jury was simply asked are these claims obvious or not? No. They had special interrogatories, and the interrogatories were crafted by plaintiff, or the judge adopted what was requested by plaintiff in terms of the gram factors and how they said what was in the art and the difference between the art. And if you look at them, they really just crafted exactly the issue that we just talked about, which is the issue of did the prior art have this filtering for relevance to the query. And what no one ever did, neither the jury or the court. Okay, I'll finish this point. Either the court or either the jury or the court, nor were there findings that you looked at and you say, okay, we have these three factual findings, is it obvious? No one ever did that. And we would submit, Your Honor, that absolutely it is obvious as a matter of law, which this court has held before that it can be something for the court to find as a matter of law, such as in the sovereign case. And I guess I'm out of time. Good morning, Mr. Wray. We do have a special verdict. The special verdict shows that the defendants couldn't even make out a prima facie case of obviousness. There are numerous missing limitations, and the jury checked the box showing which claims had no corresponding subject matter in the prior art references. The problem with this appeal is they don't acknowledge the jury verdict. The jury verdict is a special verdict. Rarely will you see such a detailed verdict on obviousness. So the secondary considerations are not even necessary in this case because of the failure to even establish a prima facie case of obviousness. Unfortunately, I had to include the verdict form in my addendum. It was not in the blue brief. If you go to the verdict form, the jury made very specific findings as to why each reference is missing various limitations. It's in the back of the red brief or in the joint appendix at A4170 and A4171. I doubt this court has ever seen a verdict form with this level of detail. And what's really incredible about this appeal is the yellow brief concedes that these findings are undisputed. That was their attempt to hope that you would try to find obviousness as a question of law, but you can't find obviousness as a question of law in view of these undisputed findings. For example, we all agree no reference teaches using the query as part of collaborative filtering. With none of those references establishing that missing limitation, you have no prima facie case of obviousness. What was the evidence in the record of copying? The evidence, well, I'm glad you raised that, Your Honor. I'm glad you're glad. First of all, the evidence was they had knowledge of the patent. And secondly, it was their promise to the jury that they would explain how they came up with the invention. The jury was in the jury room obviously thinking that they never heard how they came up with the invention. That was left unanswered. That's not evidence of copying, is it? You could infer copying if you have knowledge of the patent, you tell the jury, let me tell you how I came up with the invention, and then you never explain how you came up with the invention. But we don't need the copying secondary consideration. That's a secondary consideration. We don't need that. We don't need any of the secondary considerations when you have a failure to establish a prima facie case of obviousness. And your opposing counsel is saying that the so-called gap in the evidence, which is using a query along with the collaborative feedback data to filter out search results, that's just a small gap in light of everything else that was going on. First of all, you phrased it much differently and much more precisely than he did. He mentioned the fact that it was known to use the query in content filtering. Well, of course that was known. That's like when you use Lexis. You put in words, you get cages that have those words in it. That is old. That's what the patent acknowledges as old. But what the patent does that no other reference did was use the query as part of collaborative filtering. The over-the-wall analogy was perfect, and the jury understood it and obviously adopted our view of the references. When you throw simply the results over the wall, you obviously have lost the query. You've lost all information pertaining to the results. But using a query or a search is part of the priority, and I guess their point is, as I understood their brief, that's just common sense. Query results, query, use one of those factors, any of those factors, together with the collaborative feedback system to render the claim obvious. Well, first of all, there's no evidence of that. Here, they're misusing the common sense test, first of all. The common sense is not used to fill a gap in the references. The common sense is when you have a prime and facial case, and it could suggest the reason to combine two references. We don't have that. If you combine the references, any of the obviousness references, you still don't have all the limitations of the claim. So common sense, well, there was a gap in perfect web technologies, right, for the last limitation. There was no reference that did step D, and nevertheless, the district court found it obvious, and this court affirmed that. Well, there has to be some evidence to suggest the reason to combine. In perfect web, the record supported that, presumably. Here, we have no testimony at all from them, even from their expert, saying, let's modify the reference. Never said that. Never even suggested it would have been obvious to modify the reference. Never even explained why you would do this. Why would you send the query over the wall? What would you do with it? And in fact, the testimony was that these prior references were not even equipped to handle the query on the right side of the wall. That's unrebutted testimony from our expert in the record. So we have no evidence, not even conclusory testimony, that it would have been obvious to modify the references. We have a complete failure of proof, let alone by clear and convincing evidence, by the defendant. Their expert couldn't even say why you would do it. Instead, he said, why not? Why not is trying to shift the burden of proof onto us. They have the burden, by clear and convincing evidence, to establish facts that it would even be common sense to combine the references. They did not have that. And they don't have any testimony that it would be common sense to fill the gap in the references. They have no evidence of that. What we have are undisputed jury verdict findings that they call undisputed. So, how do they get around the finding that none of the prior art references could filter information relevant to the query? And that's collaborative. It's combined using collaborative. The great thing about this invention is you don't need to know who the user is. The prior art were profile-based systems where they knew who the user was and they were comparing the query substantively left side of the wall. What makes this invention different, and they have no references, query for collaborative. Nothing suggested that. And those findings are unrebutted. So, I don't know how they could possibly even come here and say, court, fill the gap, find common sense, when their expert didn't even say that. So, there's a complete failure of proof, let alone by clearly convincing evidence. And so, the secondary considerations are truly not helpful here because they aren't necessary because we have no primary case to begin with. On the copying point, he seems to be making a neutral argument. I want it to be very clear that the motion in Limini was based upon the failure to plead willfulness. But, there was no objections on the copying. So, even if we said there was copying, there was no objections. And in fact, there was a jury instruction in a verdict form that called out for a checkmark on copying. So, how can we hear an argument that it was improper to talk about copying when it's in the verdict form and there's jury instructions on copying? Isn't there something about the finding that Google did independent invention as well? Well, I admit that one, we explained the best we could in the brief. I think you can come up with a scenario that it can be reconciled. The claims are not identical. But again, it doesn't affect the outcome. Their argument below to the district court was... Maybe it's a hash. We can't tell what's going on. Maybe it's a... Hash. The jury made a hash of it. No, the jury, actually, if you look at this verdict form, this jury did one hell of a job. Every one of its checkmarks are consistent, with the exception, if you treat the patent as identical, then you have the inconsistency on that last secondary consideration. But that's no reason to change outcome, and that's certainly not a reason for a new trial. So, with these, I want to go to the combined, the infringement. To make it seem like there was no evidence is just not true. I put in my brief lots of citations, but the best piece of evidence to show you that the defendants used content and collaborative in the PCTR quality score is Plaintiff Exhibit 117. There's a CD-ROM in your joint appendix, and the CD-ROM explains the construction of this pie chart at A8469. And here you see the relevance and CTR, and Mr. Halvarian, who is their chief economic officer, explains that the relevance component of the quality score of the PCTR is the second most significant attribute of the PCTR to increase the quality of the ad. What you're holding up to us, Mr. Ray, is writing on it, which we can read. Oh, I'm sorry. So you better read that into the record. Yes, I have next to the word relevance, I have the word content. And next to the CTR click-through rate, I have collaborative. And next to ad quality score, I write in parentheses, that's the PCTR. But as I understand the other side's argument, it's that, yes, they're using these two different pieces of data, but they're not combining the two pieces of data into some kind of, I don't know, mathematical merger, as your back suggestion would suggest. Well, even, let's pretend for the sake of argument, that combined means merging, which of course claims construction is not before the court. There's still testimony that it's still merged. And that's at, Dr. Frieder testified so, at A2450 when discussing A8977, and he went through the defendant's documents, and he created a demonstrative at A8353, and he said even if combining was narrowly construed to be merging, there's still evidence to show merging, and he said the blue, which is the content, is merged or combined with the green collaborative to form the quality score. He even used an analogy, he used the meat grinder analogy, and that's at A2453 through 55, where he used the meat grinder to show that they're merged and merged together, even if it means merging. But any more loose term of combining, which they're not challenging, the jury was certainly free to find combining. I want to spend just one minute on my cross-examination. You mentioned the spec talked about an alternative besides using some mathematical model, something called a complex neural network function. Do you have any idea what that means? It means it's really complicated. I don't exactly know what it means, but it shows you that it can use anything from additives or anything in between. So the spec doesn't really require that it be mathematical merging. And so the jury was left to use its own ordinary meaning of combining and clearly substantial evidence, and I could rattle off many, many citations to their documents to show that they are in fact combined in the PCTR. I want to spend one minute on my cross-appeal, so I'll have a rebuttal. We did cross-appeal on one, which I think is the most significant issue in this case, is we cross-appealed on the finding of latches. You were holding that two minutes, Mr. Ray, and giving them up. I'd like to address the latches. I will be as brief as I can. There's no evidence to support in this record that a blog could actually meet the Wan-Less test. Nothing of record, given that the court erred in finding constructive knowledge on the Wan-Less. Thank you, Your Honor. A few points. First of all, going back to the combining. When place counsel said the best evidence we have of the fact that collaborative and content are used, that's what they said. And that's what's going on here. That's what Dr. Frieder said again and again and again. And all they are saying to show combining is that they're used, but that's not what the claims require. And also, that document that you showed, in the record, and I didn't have that exactly handy, but it is a document that's on Google's website that has a video that kind of helps advertisers as to how they might use the site. And it talks about quality score in terms of one to ten. Now, quality score is not one to ten. The thing that they're accusing, the predicted click-through rate, is never one to ten. That patent, that document, doesn't even talk about the quality score that's accused in this case, the predicted click-through rate. And this is the sort of game that they played throughout the trial by throwing these general documents and trying to suggest, without addressing how the system actually worked, to show that collaborative and content were used. And going back to the obviousness point, I do want to raise a few points. First of all, it is incorrect to say that our expert said nothing whatsoever about using the filtering. He said, and he explained why it would be common sense. And we asked him, he said, Dr. Carbonell argues that, sorry about that, A3172, this is page 1317 in the record, in the trial transcript, and it says, Dr. Carbonell argues that the prior art did not feature a tight integration between the search system and the content and collaborative filter. Do you agree with this analysis? No. Why? Because I think it would have been obvious to one of ordinary skill in the art, if you are filtering search results, it's obvious to keep the query around and use that also for filtering. Because why? Because if you ask for a query of a search engine, you get a result, and you have the query there, and you could use that as well. And that's because you already have it with content filtering. That's what the patent already says. And if you look again, and if we go back to the claim language. Did the PTO agree with you in light of what they said in the re-exam? The PTO did not address the obviousness of these patents in light of Rose, Lushkari, and Webhound. That's true, but the recent re-exam reasons for allowance on, I think it was 644, I can't remember, talked about something that even if you were to combine Rose with Bowman, the best you would get is so-called end-to-end filtering. I think that what, but it's the reverse in that. I think it's what it's saying that if you would be using Bowman as the lead reference, and then filling in a gap in relation to one of those. I don't think it goes to the point that we're pointing to here at all. And it certainly didn't raise the point in reference to all the art that we have, which is Rose, Webhound, and the FAB article. Your bottom line is using the query together with the collaborative feedback data would be common sense. Yeah, common sense. And as I understand it, the PTO had in front of it, just as the jury here had in front of it, the notion of whether one of ordinary skill in the art would have been motivated either through common sense or something else to use a query with collaborative feedback data to filter search results. Well, I think that what the PTO found is that the Rose reference didn't have the query, and it wouldn't have been obvious, I'm sorry, it didn't even address that issue squarely. And in fact, actually the Bowman reference, there's been another re-exam that raises the Bowman reference, and it's been found, it has found, it's in the 664 patent, and the PTO has found it invalid based on the Bowman reference. Wrap up, Mr. Croson. And then finally, I would also just like to note on the copying point. We did bring a motion in limine in relation to copying. One of the issues was willfulness, but we also raised an issue of copying. So the notion that we didn't raise copying in our motion in limine is just not in fact a representation of the record. Since you didn't address my cross-appeal, I forgo my rebuttal. All right.